ON REHEARING
BOWEN, Judge,
dissenting.
A reconsideration of the basic issue presented by this appeal convinces me that the opinion of this Court on original submission is erroneous and misconstrues the import of Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
The important facts in this case, so far as this issue is concerned, are that the defendant was arrested without probable cause, was given and waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and, approximately six hours after his arrest and sometime after he had been identified in a lineup, gave an oral confession. Both parties recognize that this case is governed by Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
To hold, as the majority does, that “there was absolutely no ‘fruits’ of the arrest placed in evidence at trial” is simply to ignore the fact that testimony given by a witness constitutes evidence just as much as real or demonstrative evidence. “Evidence” is defined as
“any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, exhibits, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention.” Black’s Law Dictionary, 498 (5th ed. 1979) (emphasis added).
There can be no question but that the confession was a fruit of the defendant’s illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). At trial, police officers testified that the defendant admitted his involvement in the robberies. Through their testimony there was “evidence” of the “fruit” of the illegal arrest.
In Crews, the court declined to order the suppression of the in-court identification although a pretrial lineup had been conducted after the illegal arrest of the accused. The court found that “the witness’s courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications.” Crews, 100 S.Ct. at 1251. However, Crews did not sanction the use of the pretrial identification and, in fact, expressly condemned it.
“The pretrial identification obtained through the use of the photograph taken during respondent’s illegal detention cannot be introduced; but the in-court identification is admissible, even if respondent’s argument be accepted, because the police’s knowledge of respondent’s identity and the victim’s independent re-recollections of him both antedated the unlawful arrest and were thus untainted by the constitutional ' violation.” Crews, 100 S.Ct. at 1252.
Although witness Jackson testified to her pretrial identification of the defendant in a police lineup it was on cross examination and the testimony was elicited by defense counsel.
Dunaway and Brown stand for the proposition that “a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that *842 the confession is “ ‘ “sufficiently an act of free will to purge the primary taint.” ’ Brown v. Illinois, 422 U.S. at 602, 95 S.Ct. at 2261 (quoting Wong Sun v. United States, 371 U.S. 471, 486 [83 S.Ct. 407, 416, 9 L.Ed.2d 441] (1963)).” Taylor v. Alabama, 457 U.S. 687, 688-689, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982). The majority finds that the “intervening factor in this cause” was “that of a properly conducted police lineup.” However, it is “frankly inconceivable” that this Court could even consider an illegal lineup, see Crews, as an intervening event. Comment, Custodial “Seizures” And The Poison Tree Doctrine: Dunaway v. New York and Its Aftermath, 13 John Marshall L.Rev. 733 (1980). Crews does not hold that a lineup constitutes an intervening factor.
The majority fails to distinguish between voluntariness for the purpose of the Fifth Amendment and the causal connection test established in Brown.
“Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint (of the illegal arrest).”
* * ⅜ * * *
“But the Miranda warnings, alone and per se, cannot always make the act (of confession) sufficiently á product of free will to break for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited.” Brown, 95 S.Ct. at 2261.
In Wong Sun the intervening event which rendered the connection between the illegal arrest and the statement “so attenuated as to dissipate the taint” were the facts that Wong Sun had been released from custody on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement. Wong Sun, 83 S.Ct. at 419.
There are three factors to consider in determining whether a confession has been purged of the taint of the illegal arrest. Taylor, 457 U.S. at p. 689, 102 S.Ct. at p. 2667; Dunaway, 99 S.Ct. at 2259; Brown, 95 S.Ct. at 2261-62. (1) The temporal proximity of the arrest and the confession: As in Taylor, the length of time between the illegal arrest and the confession was six hours. In Taylor, the Court noted that “in Brown and Dunaway the incriminating statements were obtained within two hours. However, a difference of a few hours is not significant where, as here, petitioner was in police custody, unrepresented by counsel, and he was questioned on several occasions, fingerprinted, and subjected to a lineup.” Taylor, 457 U.S. at 691, 102 S.Ct. at 2668 (emphasis added). Indeed, it is entirely possible that a longer time lapse with no intervening factors should be deemed as aggravating the situation rather than attenuating it. (2) The presence of intervening factors: As already demonstrated, the lineup conducted after the defendant’s illegal arrest cannot be considered as an intervening event sufficient to break the causal connection between the initial illegality of the arrest and the subsequent confession. It is significant that in Taylor a lineup where the accused was not identified was not even suggested as a possible intervening event, even by the dissenters. It is also important to note that in Taylor the fact that the accused visited with his girlfriend and a male companion before he confessed was, in the circumstances of that case, considered of “particularly dubious” merit as an intervening event of sufficient “attenuation” to break the connection between the illegal arrest and the confession. (3) The purpose and flagrancy of the official misconduct: The defendant was arrested without probable cause and charged with “robbery investigation”. While the police may have exercised good faith in arresting the defendant, their conduct was “purposeful” in the sense that it was investigative in nature. The purpose of the arrest was to interrogate the *843 defendant about the very crime to which his subsequent statements related. Again, Taylor is similar and has application.
“In this case, as in Dunaway, the police effectuated an investigatory arrest without probable cause, based on an uncorroborated informant’s tip, and involuntarily transported petitioner to the station for interrogation in the hope that something would turn up. The fact that the police did not physically abuse petitioner, or that the confession they obtained may have been ‘voluntary’ for purposes of the Fifth Amendment, does not cure the illegality of the initial arrest. Alternatively, the State contends that the police conduct here argues for adopting a ‘good faith’ exception to the exclusionary rule. To date, we have not recognized such an exception, and we decline to do so here.” Taylor, 457 U.S. at 693, 102 S.Ct. at 2669.
The lineup and the defendant’s confession were fruits of his illegal arrest.
Under the decisions in Brown v. Illinois, Dunaway v. New York, and Taylor v. Alabama, evidence of the confession should not have been admitted at his trial. Under Crews v. United States, the post-arrest lineup was clearly a fruit of the defendant’s illegal arrest.
The record reflects that the trial judge relied on Ex parte State of Alabama ex rel. Attorney General (Re Omar Taylor v. State, 399 So.2d 881 (Ala.1981), in holding the confession admissible.
“THE COURT: For the record, the Court finds that after Mr. Meeks was arrested, he was given his rights, and the Court finds that under the Taylor case, the giving of rights cured any error that may have been — it cures the lack of probable cause.”
Yet, Taylor was reversed on that very ground in Taylor v. Alabama. Under United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the rule of Taylor v. Alabama must be applied retroactively because the defendant’s conviction is not yet final. Furthermore, the same result is also required under Brown and Dunaway.
Therefore, I would grant the application for rehearing.
However, I would not reverse the defendant’s conviction. The State has never attempted to prove the existence of probable cause to arrest the defendant. I would remand this cause to the circuit court to allow the State to make a showing of probable cause.